**Eluid TREVINO–CASARES, Petitioner,**

v.

**U.S. PAROLE COMMISSION, Respondent.**

No. 92–9539.

United States Court of Appeals, Tenth Circuit.

April 28, 1993.

Eluid Trevino–Casares, pro se.

Richard K. Preston, Atty., U.S. Parole Commission, Chevy Chase, MD, for respondent.

Before McKAY, Chief Judge, HOLLOWAY, and BARRETT, Circuit Judges.

McKAY, Chief Judge.

We are called upon in this appeal[1] to interpret and apply the statutory provisions

---

1. The parties have indicated they do not seek oral argument and, after examining the briefs and appellate record, this panel has determined unanimously that oral argument would not mate-rially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

implementing the Prisoner Transfer Treaty (Treaty), Nov. 25, 1976, U.S.–Mex., 28 U.S.T. 7399, which entered into force November 30, 1977. Specifically, with respect to an American offender transferred to the United States from incarceration in Mexico pursuant to the Treaty, we must determine the correct method for arriving at an appropriate version of the foreign sentence, including terms of imprisonment and supervised release, for domestic enforcement under 18 U.S.C. § 4106A(b), while accommodating, or at least not interfering with, the proper application of the various credits toward service of that sentence ("service credits") to which the offender may be entitled under 18 U.S.C. § 4105.

Mr. Trevino–Casares was arrested in Mexico on January 13, 1989, and thereafter confined on drug charges for which he eventually received a nine-year sentence. After his transfer to the United States on January 31, 1991, the United States Parole Commission determined that Mr. Trevino–Casares would serve a term of 71 months' imprisonment followed by a period of 37 months of supervised release.[2] More importantly, because of the way this determination is designated by the Commission and, accordingly, implemented by the Bureau of Prisons, a substantial sum of earned and anticipated service credits concededly due Mr. Trevino–Casares under § 4105 were deemed to have no effect on his completion of this 108–month sentence. Mr. Trevino–Casares now appeals that determination to this court, contending the Commission erred in two respects: it imposed an illegal sentence by violating the condition that "[t]he combined periods of imprisonment and supervised release ... shall not exceed the term of imprisonment imposed by the foreign court," § 4106A(b)(1)(C), and it did not accord him all due credit against service of his sentence, as required by § 4105.

**I**

Before reaching the merits, we address a procedural complication that implicates the

jurisdictional limitations of this appellate court, as well as the standards governing the scope of its substantive review. The following discussion should also help to clarify the overall analytical framework within which we view this case. Consistent with the construction of the pertinent statutes expressed throughout this opinion, issues arising thereunder fall into two general categories, involving distinct functions performed by different agencies, and, as a consequence, have separate procedural routes for judicial review. Although the Commission would characterize one of the functions differently, it essentially agrees with this view and, on the basis of its categorization of the issues raised by Mr. Trevino–Casares, argues that this appeal is procedurally inappropriate and should be dismissed. *See* Brief of Respondent–Appellee at 9–12.

■ Under § 4106A, the Commission is charged with the task of translating a foreign sentence into terms appropriate to domestic penal enforcement. Specifically, applying the federal sentencing guidelines to the presentence investigation reports and recommendations of the probation service, *see* § 4106A(b)(1)(B) and (D), the Commission must determine a combined term of imprisonment and supervised release, *see* § 4106A(b)(1)(A) and (C)—that is, *a sentence, see* 18 U.S.C. §§ 3551(b)(3), 3583(a)— for the transferred offender "as though the offender were convicted in the United States district court of a similar offense," § 4106A(b)(1)(A). Accordingly, even though the statute speaks of the Commission's determination as the specification of "a release date and a period and conditions of supervised release," § 4106A(b)(1)(A), it is in procedure, substance, and effect tantamount to the imposition of a federal sentence, and it should, for all practical purposes, be treated as such.[3]

**2.** We note here, to avoid any initial misunderstanding, that though the domestic counterpart of a foreign sentence is imposed under § 4106A after the offender's transfer, satisfaction of the sentence is not limited to subsequent service in the United States. In fact, under § 4105(b) and (c), the transferred offender is credited with pre-

sentence confinement and all due service credits for pre-transfer foreign incarceration.

**3.** Although not necessary to our construction of the statute, we note that the report explaining § 4106A(b)(1)(A) supports our conclusion by expressly recognizing that it "puts the Parole Com-

Consistent with this conclusion, § 4106A(b)(2)(A) expressly makes the Commission's determination directly appealable to the circuit level, where the court of appeals is to "decide and dispose of the appeal in accordance with [18 U.S.C. § 3742] as though the determination appealed had been a sentence imposed by a United States district court." § 4106A(b)(2)(B). Although the Commission seeks to recast this entire appeal into terms that fall outside the scope of § 4106A(b)(2), we consider the first issue raised by Mr. Trevino–Casares to involve a challenge to the legality of the sentence imposed by the Commission. Thus, we have appellate jurisdiction to hear the issue under § 3742(a)(1) (authorizing appeal of sentence imposed in violation of law), and our review is governed by standards applicable on direct appeal, *see generally United States v. Banashefski,* 928 F.2d 349, 351 (10th Cir.1991) (legal conclusions in sentencing reviewed de novo, with due deference accorded application of law to underlying facts).

■ On the other hand, the administration (i.e., calculation, award, withholding) of service credits, is overseen by the Bureau of Prisons. *See* 18 U.S.C. § 3624. Furthermore, it involves the execution rather than imposition of sentence and, consequently, is a matter for habeas corpus review. *See United States v. Jalili,* 925 F.2d 889, 893 (6th Cir.1991); *see, e.g., Sinclair v. Henman,* 986 F.2d 407, 408 (10th Cir.1993). The proper characterization of this component of the proceeding has a particular significance for this appellate court, because the circuit courts of appeal have no original jurisdiction to consider habeas corpus petitions. *Noriega–Sandoval v. United States INS,* 911 F.2d 258, 261

(9th Cir.1990) (citing numerous cases); Fed. R.App.P. 22 advisory committee's note to subdivision (a). This panel therefore lacks jurisdiction to issue a decision resolving, in the first instance, the specifics of the parties' dispute over calculation and award of the particular credits due Mr. Trevino–Casares against service of his sentence.[4] Nevertheless, for reasons that will become apparent presently, our analysis and disposition of the sentencing issue properly raised in this appeal will necessarily entail a substantial degree of implicit direction regarding the issue of service credits as well. Indeed, this unavoidable analytical overlap is the direct result of precisely the error that, in our view, fatally infects the Commission's determination under the pertinent statutes.

**II**

■ After applying the sentencing guidelines to the circumstances of Mr. Trevino–Casares' offense, the Commission concluded that the appropriate guideline range was 121–151 months. However, because this range exceeds the nine-year term imposed by the Mexican authorities, which under § 4106A fixes the maximum sentence that may be imposed, it could not be used and the guideline sentence was determined to be 108 months. U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence."); *see Thorpe v. United States Parole Comm'n,* 902 F.2d 291, 292 (5th Cir.) (treating foreign sentence as statutorily authorized maximum under § 5G1.1(a)), *cert.*

mission, with regard to a [transferred] prisoner ..., in the position of a United States district court relative to a convicted defendant. Thus, the Parole Commission must use the sentencing guidelines and make the findings necessary to determine the applicable guideline range [for the offender's domestic sentence]." 134 Cong.Rec. 33,302 (Oct. 21, 1988).

4. A circuit judge, acting individually, has the authority to grant such habeas relief if the petitioner's custodian is located within the circuit, in which case the circuit judge's order "shall be entered in the records of the district court of the district wherein the restraint complained of is had," 28 U.S.C. § 2241(a), but this is not the

favored practice. *See Demjanjuk v. Meese,* 784 F.2d 1114, 1115 (D.C.Cir.1986); *Zimmerman v. Spears,* 565 F.2d 310, 316 (5th Cir.1977). Indeed, even when an application specifically seeking habeas relief is made directly to a particular circuit judge, "the application will ordinarily be transferred to the appropriate district court." Fed.R.App.P. 22(a) and advisory committee's note; *see also* 28 U.S.C. § 2241(b). Because no member of this panel elects to issue an order independently resolving the details of the parties' dispute over service credits, that matter is transferred to the appropriate district court at the conclusion of this opinion.

*denied,* 498 U.S. 868, 111 S.Ct. 185, 112 L.Ed.2d 148 (1990). Furthermore, because Mr. Trevino–Casares suffered "serious and severe physical abuse while in foreign custody resulting in permanent physical damage," the Commission imposed only 71 months imprisonment, *see* U.S.S.G. § 5K2.0 (authorizing departure from guideline sentence based on circumstances not adequately considered in formulation of guidelines), adding 37 months supervised release to total the maximum combined sentence of 108 months.[5] R.Vol. I, tab 19, Corrected Transfer Treaty Determination (May 21, 1992).

■ The parties have not raised, nor do we discern, any legal error in the length and composition *per se* of the 108–month sentence imposed by the Commission under the sentencing guidelines. However, we agree with Mr. Trevino–Casares that the Commission nevertheless erred in improperly characterizing its § 4106A determination in such a way as to foreclose subsequent application of service credits. Specifically, the Commission, evidently with the full agreement of the Bureau of Prisons, denies its § 4106A determination the status of a sentence for purposes of § 4105, leaving the Bureau of Prisons nothing but the effectively superseded foreign sentence to subtract the offender's service credits from. *See* Brief of Respondent–Appellee at 16.[6] Under this view, if the latter calculation results in a period of confinement shorter than the imprisonment portion of the § 4106A sentence, it determines the release date, in which case the Commission's determination is simply disregarded (though, presumably, the Commission's determination remains subject to reactivation in the event enough anticipated service credits are withheld, pursuant to § 4105(c)(3), to alter the relevant priorities). *See id.* at 14–16.

We find no authority in the pertinent statutes for the rather convoluted interpretation offered here by the Commission, involving parallel and mutually exclusive confinement determinations with a divergent treatment of service credits. The Commission maintains that "[i]t is clear from § 4105(c)(1) that good time credits must be subtracted from the total foreign sentence and not the release date set by the Commission. That provision states that the good time credit shall be from '... the total sentence imposed and certified by the foreign authorities.'" *Id.* at 15. Actually, the immediate context omitted from the Commission's quotation makes it clear that the reference to foreign sentences here has nothing whatever to do with specifying how or where service credits are to be *applied.* A more meaningful excerpt from § 4105(c)(1) would show that the provision is concerned, rather, with the *computation* of foreign and domestic service credits and refers to the foreign sentence simply to specify the appropriate rate of accumulation (evidently to clarify that the offender with less than one year left to be served after transfer should not cease earning service credits, *see* 18 U.S.C. § 3624(b)):

> Subsequent to the transfer, the offender shall in addition [to pre-transfer service credits] be entitled to credits ... computed on the basis of the time remaining to be served at the time of the transfer and at the rate provided in section 3624(b) of this title for a sentence of the length of the total sentence imposed and certified by the foreign authorities. These credits shall be combined to provide a release date for the

5. One circuit has held that, although § 4106A (and underlying Treaty Article V(3)) expressly prohibits only domestic sentences that *exceed* foreign sentences, Treaty Article VI also precludes imposition of *shorter* domestic sentences, because it grants the transferring state exclusive jurisdiction over proceedings "to challenge, modify, or set aside sentences handed down by its courts." *See Cannon v. United States Dep't of Justice,* 973 F.2d 1190, 1195-97 (5th Cir.1992), *petition for cert. filed,* (U.S. Feb. 2, 1993) (No. 92–7521). We need not decide whether sentence imposition under § 4106A can ever constitute a collateral attack for purposes of Article VI, as the issue is not before us.

6. We note, however, that in arguing the jurisdictional issue addressed earlier, the Commission distinguishes its determination from that of the Bureau of Prisons—as we do consistently throughout—precisely on the basis that "the Parole Commission is in the same position as a sentencing court and sentencing courts do not compute good time credits in order to impose sentence pursuant to the guidelines." Brief of Respondent–Appellee at 14; *see id.* at 9–12.

offender pursuant to section 3624(a) of this title.

As the final sentence from § 4105(c)(1) recognizes, the application of service credits is governed by 18 U.S.C. § 3624(a), which indicates, uncontroversially, that such credits are applied to the sentence of confinement the prisoner is serving. *See Mistretta v. United States,* 488 U.S. 361, 367, 109 S.Ct. 647, 652, 102 L.Ed.2d 714 (1989). In the present context, that is the sentence determined by the Commission "as though the offender were convicted in a United States district court of a similar offense," § 4106A(b)(1)(A), and reviewed on direct appeal "as though … a sentence imposed by the United States district court," § 4106A(b)(2)(B).

There is also an internal inconsistency in the Commission's position that reflects an unwillingness to commit fully to the consequences of its construction of the statutory scheme. Specifically, even the Commission maintains that Mr. Trevino–Casares' 108–month sentence is to be treated as if it commenced on the date of his arrest in Mexico, nearly a year and a half before he was sentenced. *See* Brief of Respondent–Appellee at 3–5. Thus, the Commission would permit Mr. Trevino–Casares credit, against his § 4106A sentence, for foreign presentence confinement, even though such credit is provided for in the same manner as the other service credits that the Commission holds do not so apply. *Compare* § 4105(b) *with* § 4105(c). We certainly agree that the time spent in foreign incarceration should not be lost to the transferred offender serving a sentence under § 4106A, but that is a result consistent with our construction of the statutes and at odds with the Commission's.

Underlying our analysis is a rigorous responsibility to two clear congressional commands expressly incorporated into the statutes under review. The first, specifically invoked by Mr. Trevino–Casares, is that the domestic sentence determined under § 4106A, including both confinement and supervised release, may not exceed the term of imprisonment imposed by the foreign authorities. § 4106A(b)(1)(C); *see also* Treaty Article V(3) ("No [foreign] sentence of confinement shall be enforced by the Receiving State in such a way as to extend its duration beyond the date [specified by] … the Transferring State."). The second relates to the matter of service credits and directs that transferred prisoners receive the same treatment as all other inmates with respect to their domestic confinement: "Except as provided elsewhere in this section [regarding foreign time served prior to transfer], a [transferred] offender … shall remain in the custody of the Attorney General *under the same conditions and for the same period of time* as an offender who had been committed to the custody of the Attorney General by a court of the United States…." § 4105(a) (emphasis added); *see also* § 4105(c) (foreign and domestic service credits of transferred offender combine to provide release date for transferred offender that is otherwise determined in same manner as for all other inmates under 18 U.S.C. § 3624).

Our construction of the statutory scheme adheres to these two equally important principles by enforcing the requirement that the sentence imposed under § 4106A not exceed the foreign sentence and, at the same time, according the transferred offender the same service credit benefit against execution of that sentence as would be accorded any other inmate against the service of his or her sentence. In contrast, depending on how the Commission's action is characterized, it either (1) satisfies § 4106A by imposing an authorized 108–month domestic sentence, but violates § 4105(a) by precluding application of due credit against service of that sentence, or (2) directly violates § 4106A by imposing an excessive domestic sentence (in effect, 108 months *plus* the time represented by the due, yet unawarded, service credit).

We are mindful that the Commission administers, in part, the statutory scheme under review and, therefore, the principles of deferential review summarized in *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), are implicated here:

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions. First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Con-

gress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, . . . the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

*Id.* at 842–43, 104 S.Ct. at 2781–82 (footnotes omitted). With respect to the first question, we think Congress expressly prescribed how transferred offenders should be treated for purposes of domestic confinement. While perhaps not clear enough to remove all ambiguity, certainly the mandatory, directive language employed in the statutes gives no indication, explicitly or implicitly, that Congress intended the critical issue of what sentence to reduce by service credits to be merely a matter of administrative choice, i.e., "a gap for the agency to fill." *Id.* at 843, 104 S.Ct. at 2782.

Assuming, for purposes of argument, that enough ambiguity exists to bring us to the second question articulated in *Chevron,* we "must look to the structure and language of the statute[s] as a whole" to decide whether the Commission has advanced a permissible construction. *National R.R. Passenger Corp. v. Boston & Maine Corp.,* —— U.S. ——, ——, 112 S.Ct. 1394, 1401, 118 L.Ed.2d 52 (1992). We have met this responsibility in the detailed analysis developed throughout this opinion, from which we have concluded that the Commission's construction is both internally inconsistent and impermissibly at odds with the evident intent of the statutory scheme. Accordingly, we consider it proper, indeed our duty, to follow our own independent interpretation of the statutes that govern the controversy before us.

Finally, we acknowledge that the Fifth Circuit has recently construed these statutes in a way that is inconsistent at various points with both our views and those of the Commission. *See, e.g., Cannon v. United States Dep't of Justice,* 961 F.2d 82 (5th Cir.), *reh'g denied,* 973 F.2d 1190 (1992), *petition for cert. filed,* (U.S. Feb. 2, 1993) (No. 92–7521); *Thorpe v. United States Parole Comm'n,* 902 F.2d 291 (5th Cir.), *cert. denied,* 498 U.S. 868, 111 S.Ct. 185, 112 L.Ed.2d 148 (1990). We

do not deem it necessary to engage in a lengthy point-by-point discussion of our differences. Suffice it to say that, for the reasons we have already expressed, we think our construction correctly implements in straightforward fashion the language and overall structure of the statutes under review.

Accordingly, we AFFIRM the Commission's determination under § 4106A with respect to its length and composition, but we expressly MODIFY its legal status to that of a sentence for purposes of the statutory scheme under review. The habeas corpus component of this proceeding, involving the actual computation of the particular service credits due Mr. Trevino–Casares against this sentence, is TRANSFERRED to the United States District Court for the Western District of Oklahoma, the district in which Mr. Trevino–Casares is confined.