**Adebola Olumbunm AJALA,
Petitioner–Appellant,**

**v.**

**UNITED STATES PAROLE
COMMISSION, Respondent–
Appellee.**

No. 92–10430.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 9, 1993.

Decided July 1, 1993.

Sally Schneider Duncan, Office of the Federal Public Defender, Phoenix, AZ, for petitioner-appellant.

Richard K. Preston, U.S. Dept. of Justice, Chevy Chase, MD, for respondent-appellee.

Before NORRIS, HALL, and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Adebola Olumbunm Ajala, who was convicted in England and transferred to the United States to serve the remainder of her sentence, challenges the determination of the United States Parole Commission ("Commission") establishing her release date pursuant to 18 U.S.C. § 4106A. Ajala claims that the Commission erred in two respects. First, the Commission failed to account for good time credit earned while she was incarcerated in England and which may be earned

during her incarceration in the United States. Second, the Commission denied a downward adjustment in her offense level for her allegedly minimal or minor role in the offense. We conclude that we have jurisdiction over the latter determination, but not over the former. We affirm the latter, and dismiss the appeal as to the former.

## BACKGROUND FACTS

Ajala is an American citizen. On May 15, 1990, Ajala was arrested by British customs officials as she deplaned in London from Nigeria. The officials noticed that she had laxatives in her bag. Two urine samples taken from Ajala tested positive for opiates. She subsequently excreted 89 packages containing 238.8 grams of heroin. Ajala claims that her "uncle," Tony Falano, preyed upon her desire to return to the United States to continue her education and induced her to make the trip. She says he bought her plane ticket, gave her $500, and introduced her to a man named Shankar. She asserts that Shankar drugged her and forced her to swallow the packages. Finally, she claims that she was instructed to meet an unidentified man in New York who would relieve her of the packages, but she has difficulty recalling any other details because she was drugged.

Ajala was convicted in the United Kingdom of importation of a controlled drug and sentenced to six years imprisonment. Pursuant to a prisoner transfer treaty,[1] Ajala consented to be transferred to the United States to serve the remainder of her sentence. The United States Probation Service prepared a post-sentence report, in accordance with the directive in 18 U.S.C. § 4106A(b)(1)(D). At the hearing before a panel of Commission hearing examiners on April 22, 1992, Ajala testified to her version of the facts.

In making the release date determination mandated by 18 U.S.C. § 4106A, the Commission concluded that Ajala's offense was most similar to 21 U.S.C. § 960(a)(2)(A) (im-portation of a controlled substance—heroin). The Commission assigned an offense level of 24 and criminal history category of I, which yielded a range of 51 to 63 months.[2] The Commission ordered that Ajala serve 51 months imprisonment and 21 months supervised release, which equalled the 72 month sentence imposed by the English court.

## DISCUSSION

### A. *Good Time Credit.*

The Commission had jurisdiction to make the release date determination pursuant to 18 U.S.C. § 4106A(b)(1)(A). Appellate jurisdiction, if any, is based on 18 U.S.C. § 4106A(b)(2). The scope of appellate jurisdiction is essentially a question of statutory interpretation. *See United States v. Morales,* 898 F.2d 99, 101 (9th Cir.1990).

We are obligated to first determine whether we do have jurisdiction to consider the issues presented on appeal. *See id.* The statute which confers appellate jurisdiction over a determination of the Commission is found at 18 U.S.C. § 4106A(b)(2). It reads:

(A) A determination by the United States Parole Commission under this subsection may be appealed to the United States court of appeals for the circuit in which the offender is imprisoned at the time of the determination of such Commission. . . .

(B) The court of appeals shall decide and dispose of the appeal in accordance with section 3742 of this title as though the determination appealed had been a sentence imposed by a United States district court.

Appellate jurisdiction is confined to review of the Commission's determination "under this subsection"—that is, under § 4106A(b). Thus, the scope of the Commission's determi-

---

1. Convention on the Transfer of Sentenced Persons, Council of Europe, signed at Strasbourg March 21, 1983, entered into force as to the United States, July 1, 1985, —— U.S.T. ——, T.I.A.S. No. 10824.

2. The Commission applied the November 1991 Sentencing Guidelines which were in effect at the time of the Commission's determination. The quantity of heroin involved yielded an offense level of 26. U.S.S.G. § 2D1.1(c)(9). The Commission deducted two levels for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1.

nation under § 4106A(b) defines the scope of appellate jurisdiction.

Section 4106A(b)(1) provides:

(A) The United States Parole Commission shall, without unnecessary delay, determine a release date and a period and conditions of supervised release for an offender transferred to the United States to serve a sentence of imprisonment, as though the offender were convicted in a United States district court of a similar offense.

(B) In making such determination, the United States Parole Commission shall consider—

(i) any recommendation of the United States Probation Service, including any recommendation as to the applicable guideline range; and

(ii) any documents provided by the transferring country; relating to that offender.

(C) The combined periods of imprisonment and supervised release that result from such determination shall not exceed the term of imprisonment imposed by the foreign court on that offender.

(D) The duties conferred on a United States probation officer with respect to a defendant by section 3552 of this title shall, with respect to an offender so transferred, be carried out by the United States Probation Service.

The resemblance to the sentencing procedure utilized by district courts is inescapable. The Commission is directed to determine a release date and a period of supervised release "as though the offender were convicted in a United States district court of a similar offense." In making this determination, the Commission must consider three sources of information: the recommendation of the United States Probation Service, any documents provided by the transferring country, and the term of imprisonment imposed by the foreign country. The Commission applies the Sentencing Guidelines to that information in the same manner as would a district court. The salient difference between the Commission's determination (time of imprisonment and supervised release decision) and a district court's sentence is that the

Commission's determination must not exceed the foreign sentence previously imposed. 18 U.S.C. § 4106A(b)(1)(C). Similarly, appellate review of the Commission's determination is the same. "as though the determination appealed had been a sentence imposed by a United States district court." *Id.* § 4106A(b)(2)(B). Although the statute uses the term "release date" to describe the Commission's imprisonment determination, it is in practical effect part of a sentence calculated in accordance with United States law. *Trevino–Casares v. United States Parole Comm'n,* 992 F.2d 1068, 1070–71 (10th Cir.1993). As the court said in *Trevino–Casares,* "[I]t is in procedure, substance, and effect tantamount to the imposition of a federal sentence, and it should, for all practical purposes, be treated as such." *Id.*

Ajala contends that the Commission's release date determination must also account for good time credit earned while she was imprisoned in England and which may be earned during her imprisonment in the United States. For this proposition, Ajala must go outside § 4106A to another section of the transfer treaty statutes—18 U.S.C. § 4105.

Section 4105 deals with the terms and conditions of imprisonment of transferring offenders. The general import of § 4105 is that transferring offenders are to be treated similarly to United States prisoners. Subsection (a) provides that a transferring offender shall be imprisoned "under the same conditions and for the same period of time as an offender who had been committed to the custody of the Attorney General by a court of the United States for the period of time imposed by the sentencing court." 18 U.S.C. § 4105(a). Just as in the case of a United States prisoner, the transferring offender shall receive credit for time spent in custody and for good time credit earned in the United States. *Id.* § 4105(b), (c). Subsection (c) provides that a transferring offender shall also receive good time, labor or other credit earned in the foreign country.

The transferred offender shall be entitled to all credits for good time, for labor, or any other credit toward the service of the sentence which had been given by the

transferring country for time served as of the time of the transfer. *Subsequent to the transfer,* the offender shall in addition be entitled to credits toward service of sentence for satisfactory behavior, computed on the basis of the time remaining to be served at the time of the transfer and at the rate provided in section 3624(b) of this title for a sentence of the length of the total sentence imposed and certified by the foreign authorities. *These credits shall be combined* to provide a release date for the offender pursuant to section 3624(a) of this title.

*Id.* § 4105(c)(1) (emphasis added). This section simply states that a transferring offender shall receive the benefit of credit earned while imprisoned in the foreign country. It does not say who shall apply the credit, when that credit shall be applied, or even what the credit shall be applied against.

"When Congress writes a statute in the passive voice, it often fails to indicate who must take a required action. This silence can make the meaning of a statute somewhat difficult to ascertain." *United States v. Wilson,* — U.S. —, —, 112 S.Ct. 1351, 1354, 117 L.Ed.2d 593 (1992). There is no difficulty here, however, when we consider the plain language of the treaty transfer statutes in light of the sentencing and credit scheme established for United States prisoners. Certainly, nothing in the plain language of § 4105(c)(1) or § 4106A suggests that the Commission's release date determination must or can account for foreign credit. The Commission must determine a term of imprisonment and a period of supervised release based on the application of the Sentencing Guidelines in the same manner as a district court. Only *that* determination may be appealed to this court.

▮ Requiring the Commission to account for foreign earned credit at the time of the release date determination creates an inconsistency in treatment between United States prisoners and transferring offenders.

The calculation of credit for United States prisoners is committed to the Bureau of Prisons. For example, the Bureau of Prisons calculates credit for time spent in custody.[3] *Wilson,* — U.S. at — – —, 112 S.Ct. at 1354–55; *see* 18 U.S.C. § 3585(b); *United States v. Checchini,* 967 F.2d 348, 350 (9th Cir.1992). The Bureau of Prisons also calculates credit for satisfactory behavior. 18 U.S.C. § 3624. United States prisoners are entitled to administrative review of the computation of their credit and to judicial review upon exhaustion of the administrative remedies. *See Wilson,* — U.S. at —, 112 S.Ct. at 1355. If, as Ajala urges, the Commission must perform a § 4105(c)(1) accounting of earned foreign credit as part of its § 4106A release date determination, a transferring offender would be entitled to immediate judicial review of that determination, completely bypassing the administrative scheme. Such a construction would contravene the language and the intent of the transfer treaty statutes which were enacted to ensure that transferring offenders are treated the same as United States prisoners.

We recognize that our conclusion differs from that of the Fifth Circuit. *See Cannon v. United States Dep't of Justice,* 973 F.2d 1190 (5th Cir.1992), *cert. denied,* — U.S. —, 113 S.Ct. 2354, 124 L.Ed.2d 262 (1993). The *Cannon* court concluded that the release date referred to in § 4106A is the same release date referred to in § 4105 and therefore the Commission is obligated to consider earned foreign credit in making its § 4106A release date determination. *Id.* at 1194. We disagree. The term "release date" is used only in the last sentence of § 4105(c)(1), which reads, "These credits [credit given by the transferring country and credit earned in the United States] shall be combined to provide a release date for the offender pursuant to section 3624(a) of this title." The statute does not say that the credits are combined to provide a release date pursuant to § 4106A.

---

**3.** We note that the Commission unnecessarily usurped a function of the Bureau of Prisons by accounting for time that Ajala spent in custody. The Commission counted 51 months from the date of Ajala's arrest which resulted in a "release date" of August 15, 1994. We trust that the Commission's obvious credit against the Guideline sentence for time spent in custody will not be overlooked by the Bureau of Prisons when it awards service credits. *See Trevino–Casares,* 992 F.2d at 1072.

Rather, the statute says that the credits are combined to provide a release date pursuant to § 3624 and undoubtedly it is the Bureau of Prisons which accounts for credit under § 3624. In other words, we agree with the decision of the Tenth Circuit that the calculation and award of foreign and domestic credits is not part of the Commission's § 4106A determination, but is a matter for the Bureau of Prisons. *Trevino–Casares,* 992 F.2d at 1070.

 Because our jurisdiction extends only to review of the Guideline sentence, we cannot decide whether the law permits the Bureau of Prisons to follow the Commission's view regarding the proper method for deducting foreign and domestic credits. *Cf. Trevino–Casares,* 992 F.2d at 1071–73 (rejecting Commission's view as impermissible construction of statute). However, we reiterate that the release date determination made by the Commission pursuant to § 4106A should, for all practical purposes, be treated as the imprisonment part of a sentence. We recognize that the Commission does not simply pronounce the term of imprisonment, but also determines a "release date." As that date accounts for neither prior custody nor good time credits, it should be determined by adding the term of imprisonment to the date on which the Commission makes its decision.

In fine, we hold that the § 4106A release date determination involves no more than a straightforward application of the Sentencing Guidelines to the information specified in § 4106A(b)(1)(B) and (C). Consequently, our jurisdiction over a decision of the Commission extends only to the Commission's application of the Sentencing Guidelines.[4] We have no jurisdiction to consider Ajala's claim that credits earned in England and potentially earnable in the United States have not been, or will not be, accounted for in a proper manner. *See Trevino–Casares,* 992 F.2d at 1070–72. We therefore dismiss the appeal to the extent it relates to the credit determination.

**B.** *Offense Role Adjustment.*

 We do have jurisdiction to review the Commission's denial of a downward adjustment for role in the offense. Whether a defendant was a minimal or minor participant in criminal activity is a finding which "is heavily dependent upon the facts of the particular case," and is reviewed for clear error. U.S.S.G. § 3B1.2, comment. (backg'd); *see, e.g., United States v. Sanchez–Lopez,* 879 F.2d 541, 557 (9th Cir.1989). The burden is on the defendant to prove by a preponderance of the evidence that a downward adjustment is merited. *United States v. Howard,* 894 F.2d 1085, 1089–90 & n. 4 (9th Cir.1990).

 Relying on the examples in the Application Notes to § 3B1.2, Ajala claims that she "was recruited as a courier for a single smuggling transaction," that she had no "knowledge or understanding of the scope and structure of the enterprise and of the activities of others," and that she was obviously "less culpable" than the "uncle" and Shankar. *See* U.S.S.G. § 3B1.2, comment. (nn. 1–3).

 A defendant may be less culpable than other participants, but that does not necessarily entitle her to a minimal or minor role adjustment. *See United States v. Molina,* 934 F.2d 1440, 1452 (9th Cir.1991) (adjustment denied to defendant who argued he was least culpable because he was only middleman in drug transaction); *United States v. Zweber,* 913 F.2d 705, 710 (9th Cir.1990) (although runner was less culpable than other participants, no clear error to deny minor role reduction). And the mere fact that a defendant acted as a drug courier does not mean his role was minimal or minor. *See United States v. Lui,* 941 F.2d 844, 849 (9th Cir.1991) (no role adjustment for defendant arrested in airport with heroin in luggage); *Zweber,* 913 F.2d at 710 (no role adjustment

---

**4.** Subsequent to oral argument in this case, the Commission informed us that it has promulgated a final rule, applicable to all transferees still in custody, which requires an across-the-board downward adjustment of 15% in the release dates set by the Commission pursuant to § 4106A. *See* 58 Fed.Reg. 30,703, 30,706 (1993) (to be codified at 28 C.F.R. § 2.62(i)(2)). Neither the validity nor the applicability of that rule is before us in this appeal and we do not consider it.

for runner who delivered cocaine and received money in return).

 Ajala did not produce any evidence to corroborate her story and the Commission hearing examiners, who observed Ajala's testimony at the hearing, determined that her credibility was poor. A defendant's self-serving statement that she was merely a courier may be insufficient to support a finding of a minimal or minor role in the offense. *See Lui,* 941 F.2d at 849; *United States v. Rigby,* 896 F.2d 392, 394 (9th Cir.1990). In addition, no one else was arrested and Ajala gave no useful information regarding her New York contact. Thus, we cannot say that the Commission clearly erred in determining that Ajala failed to prove by a preponderance of the evidence that she played only a minimal or minor role in the offense.

## CONCLUSION

When an offender is transferred from another country to the United States, it is necessary to determine how long she will remain in prison, how long she will be subject to the strictures of a supervised release program, and what the terms of supervised release will be. In a word, it is necessary to determine what amounts to her sentence. That function has been given to the Commission. The calculation of credits is the task of the Bureau of Prisons. This, to the extent possible, treats the transferred offender as she would have been treated if she had been "convicted in a United States district court." 18 U.S.C. § 4106A(b)(1)(A). We agree with the Tenth Circuit that this "construction correctly implements in straightforward fashion the language and overall structure of the statutes under review." *Trevino–Casares,* 992 F.2d at 1073.

We have reviewed and we affirm Ajala's Guideline sentence. We decline her request that we do more because we have no jurisdiction to do so. Thus, we do not consider the nature and extent of any credits to which she may be entitled.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P.

**DISMISSED** in part for lack of jurisdiction and otherwise **AFFIRMED.**