53 F.3d 343
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Jesse SAMPSON, aka Jesse Boyd Sampson, Defendant-Appellant.
 No. 94--6346.
 (D.C. No. CR-94-68-C)
 United States Court of Appeals, Tenth Circuit.
 April 28, 1995.
 
 Before ANDERSON, BALDOCK and BRORBY, Circuit Judges.
 
 ORDER AND JUDGMENT[1]
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9. The cause is therefore ordered submitted without oral argument.
 
 
 2
 Defendant-appellant Jesse Boyd Sampson appeals two sentencing determinations by the district court. Our jurisdiction arises under 28 U.S.C. 1291 and 18 U.S.C. 3742(a)(2) and we affirm.
 
 
 3
 After Mr. Sampson's claim for social security disability benefits was denied by an administrative law judge, he telephoned his United States Representative and told an aide that he would have to start "shooting" or "blowing people away" to get justice. It is undisputed no threats were ever communicated to the judge and that Mr. Sampson was never observed in possession of a weapon.
 
 
 4
 Based on this conduct, Mr. Sampson was charged, by way of a felony complaint, with threatening to kill a federal official in violation of 18 U.S.C. 115(a)(1)(B). Because Mr. Sampson sought to avoid a felony conviction, his attorney and the government reached a plea arrangement whereby the government agreed to accept Mr. Sampson's plea to the misdemeanor offense of obstruction of court orders, in violation of 18 U.S.C. 1509, in exchange for dismissal of the felony charges. Mr. Sampson thereafter pled guilty to one count of violating 1509.
 
 
 5
 The case was then referred to the probation department for preparation of a presentence report. The probation officer determined the guideline applicable to 1509 was U.S.S.G. 2J1.2, which established a base offense level of 12. After adjustments of 8 levels and 3 levels under U.S.S.G. 2J1.2(b)(1) and 3A1.2, respectively, Mr. Sampson's base offense level was set at 23. He received a 3-level reduction for acceptance of responsibility, resulting in an adjusted base offense level of 20 which, when coupled with a criminal history category of I, set the guideline range at 33-41 months. Section 1509, however, established a statutory maximum term of imprisonment of one year, see 18 U.S.C. 1509, and this therefore became the applicable guideline range. See, e.g., Trevino-Casares v. United States Parole Comm'n, 992 F.2d 1068, 1070 (10th Cir.1993) (discussing U.S.S.G. 5G1.1(a)).
 
 
 6
 Prior to sentencing, Mr. Sampson objected to the probation officer's reliance on 2J1.2 in determining his offense level. He argued that the original felony charge would have resulted in a suggested guideline range of 0-6 months under 2A6.1, and that it was patently wrong and unfair for him to receive a harsher sentence as a result of his plea to a misdemeanor. In the alternative, Mr. Sampson urged the court to grant a downward departure.
 
 
 7
 The sentencing court overruled Mr. Sampson's objection to the use of 2J1.2, denied the request for a downward departure, and sentenced Mr. Sampson to the statutory maximum of 12 months imprisonment. We review de novo the application and interpretation of the Sentencing Guidelines. See United States v. Diggs, 8 F.3d 1520, 1526 (10th Cir.1993).
 
 
 8
 Mr. Sampson first asserts that imposing "a far greater sentence under the guideline selected by the court for the misdemeanor conviction than he would have [received] had he been sentenced under the more serious felony charge ... [was] unjust, unseemly and should not stand." In essence, he asserts this constituted a violation of due process because Congress intended that violations of 115, a felony, be punished more severely than violations of 1509, a misdemeanor. We are not persuaded.
 
 
 9
 Mr. Sampson's argument is premised on the assumption that a defendant who pleads guilty must receive a more lenient sentence in exchange for their plea of guilty even though there is no sentencing benefit. We have uncovered no rule, constitutional or otherwise, mandating such a result.[2] There are several reasons why an individual might elect to plead guilty. Undoubtedly, one of the most common reasons is the defendant's desire to reduce his or her potential exposure to incarceration, accomplished by pleading guilty to a lesser charge in exchange for dismissal of the more serious charges. See, e.g., Santobello v. New York, 404 U.S. 257, 262 (1971). But there are other considerations that might induce one to plead guilty, separate and apart from the desire to receive a lesser sentence. For example, the Supreme Court has recognized that an individual who protests his innocence but who otherwise provides a factual basis for a plea of guilty may enter a plea of guilty in order to avoid facing the "grim alternatives" of trial. See North Carolina v. Alford, 400 U.S. 25, 36 (1970). Moreover, as in the case at bar, it is possible that an individual might desire to plead guilty to a serious misdemeanor charge instead of proceeding to trial on a relatively minor felony offense precisely because the attendant consequences of a felony conviction, including the loss of many fundamental civil liberties, are much greater than those relative to a misdemeanor conviction.[3]
 
 
 10
 Plea bargaining is unquestionably "an essential component of the administration of justice." Santobello, 404 U.S. at 260. Nonetheless, plea bargains are analogous to, and often interpreted as, contracts. See, e.g., United States v. Wagner, 994 F.2d 1467, 1476 (10th Cir.1993); United States v. Gamble, 917 F.2d 1280, 1282 (10th Cir.1990). Borrowing this analogy, we believe that as long as there is some consideration received in exchange for the plea bargain, then a valid contract is created, without regard to the nature of the consideration. In this case, Mr. Sampson signed a plea agreement acknowledging that the sentence he could receive after he pled guilty was "solely a matter for the judge to decide." There has been no allegation that this plea was involuntarily given. In exchange for Mr. Sampson's decision, he received consideration in the form of a misdemeanor conviction rather than a felony conviction. The fact he might have received a lesser sentence[4] if he had been convicted of the original felony charge is simply not sufficient to permit a court to override an otherwise valid plea bargain. Therefore, we hold that on the facts of this case, Mr. Sampson's right to due process was not violated.
 
 
 11
 Mr. Sampson next asserts the district court erred in refusing to grant his request for a downward departure under 5K2.0 and 5H1.6 of the Sentencing Guidelines. This argument is meritless. We presume the district courts are aware of their discretionary authority to depart downward. See, e.g., United States v. Rodriguez, 30 F.3d 1318, 1319 (10th Cir.1994). This presumption can only be rebutted with evidence demonstrating the sentencing court unambiguously believed to the contrary. See id. Mr. Sampson does not contend the district court did not recognize it possessed the power to depart downward, and therefore we adhere to "the rule of this circuit that this court does not have jurisdiction to hear a defendant's appeal from the district court's discretionary refusal to depart downward from the Sentencing Guidelines." Diggs, 8 F.3d at 1526.[5]
 
 
 12
 Accordingly, we AFFIRM the sentence imposed by the district court.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 United States v. Bethancurt, 672 F.Supp. 1427 (D.D.C.1988) merely suggested, without deciding, that a plea agreement resulting in no benefit to the defendant could "possibly" violate due process. Id. at 1431. Thus, Bethancurt does not support such a rule
 
 
 [3]
 While the district court in Bethancurt, a case involving a plea to a misdemeanor rather than a felony, viewed that case as one where the defendant would "receive no sentencing benefit whatever from his plea," Bethancurt, 672 F.Supp. at 1431, we believe that court's focus--on the existence of a "sentencing benefit"--is unduly narrow. As we have indicated, individuals may elect to plead guilty even in the absence of a benefit at sentencing per se. See, e.g., Alford, 400 U.S. at 36. Thus, we believe an otherwise proper plea bargain is not invalid merely because the defendant does not receive a "sentencing benefit."
 
 
 [4]
 It is far from clear what Mr. Sampson's sentence would have been if he had been convicted of the original felony charge. Section 2A6.1(a) establishes a base offense level of 12 for a conviction under 115 which, when coupled with a criminal history category of I, results in a range of 10-16 months. Presumably, Mr. Sampson's argument that his sentencing range would have been 0-6 months assumes he would be entitled to the 4 level reduction set forth in 2A6.1(b)(2), which states that if there is no evidence the defendant intended to carry out the threat, and if the offense involved a single instance evidencing little or no deliberation, the a 4 level decrease is proper. See U.S.S.G. 2A6.1(b)(2). A base offense level of 8, with a criminal history category of I, results in a range of 0-6 months. As we have indicated, however, this calculation rests on a number of assumptions that simply cannot be made with any certainty at the present time
 
 
 [5]
 To be sure, the district court stated "I do not find any reason to downward depart in this case." Thus, we are confident the district court knew it possessed this authority, and that it declined to exercise that authority in this case