NUMBER
13-08-00345-CV

 

                                        COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

                                                                                                                             

 

JOE LEE RUBIO,                                                                                    Appellant,

 

v.

 

EDUARDO
CAMPIRANO, SECRETARY

OF
THE TEXAS SOUTHMOST COLLEGE

DISTRICT,
AND THE BOARD OF TRUSTEES

OF
TEXAS SOUTHMOST COLLEGE DISTRICT,                     Appellees.

                                                                                                                                                                                                  


                   

On appeal from the 107th District Court 

of Cameron County, Texas.

                                                                                                                                                                                    

                

MEMORANDUM OPINION

 

                      Before
Justices Garza, Benavides, and Vela

                      Memorandum
Opinion by Justice Benavides

 

            Appellant,
Joe Lee Rubio, appeals the denial of an injunction which would have required
his inclusion on the ballot for a trustee position in the 2008 Texas Southmost
College District Board of Trustees election.  By four issues, Rubio
asserts that:  (1)  a foreign conviction cannot deprive him of his
civil right under the United States and Texas Constitutions to run for
political office; (2) a foreign conviction cannot constitute a “final conviction”
for the purposes of election code section 141.001(a)(4); (3) Rubio was
“released from any resulting disabilities” when he completed his sentence
related to his foreign conviction; and (4) a “judicial determination” was not
final when his name was removed from the ballot.  We affirm.

I.      Background

            In 1995, Rubio, a United States
citizen, was convicted of transportation of marihuana in Mexico.  A Mexican
court sentenced Rubio to ten years in prison, and he served approximately six
years in a Mexican penitentiary.  On August 27, 2001, pursuant to a United
States-Mexico treaty on prisoner transfer,[1]
Rubio was transferred to the United States.  In
connection with this transfer, the United States Parole Commission determined
that Rubio’s foreign conviction was most similar to the felony of “Possession
with Intent to Distribute a Controlled Substance,” a class E felony.  See
21 U.S.C.A. § 841(a)(1) (2006) (providing that “it shall be unlawful for
any person knowingly or intentionally . . . possess with intent to manufacture,
distribute, or dispense, a controlled substance. . . .”); see also 18
U.S.C.A. § 3559(a)(5) (2006) (denoting a class “E” felony as a crime meriting
less than five years’ imprisonment but more than one year).  Specifically,
the Parole Commission made the following finding in Rubio’s Transfer Treaty
Determination:

The Commission finds
that the foreign offense is most similar to Possession with Intent to
Distribute a Controlled Substance . . . . It is further found that a period of
supervised release of 3 to 5 years is applicable.

 

The Commission
orders that the transferree be released on the record after the service of 72
months on 8-28-2001 . . . foreign labor credits and good conduct time (if any)
will be deducted from this release date determination pursuant to Bureau of
Prisons Procedures.

 

Rubio
served some time at the LaTuna Federal Correctional Institution in Anthony,
Texas before he was released on a supervised release.  He served a supervised
release term from August 28, 2001 to March 7, 2003 until all proceedings
related to this conviction were dismissed.

In
2006, Rubio filed an application to run as a candidate for Place 1 of the Texas
Southmost College District (TSC) Board of Trustees election.  At that
time, TSC sought an opinion from the Office of the Attorney General of Texas to
determine Rubio’s eligibility for office.  The Attorney General, through
an informal advisory opinion, opined that Rubio was ineligible to run for
office.  Rubio withdrew his request for candidacy.  However, on February
15, 2008, Rubio again filed an application to run for TSC trustee. Relying on
the Office of the Attorney General’s 2006 advice and Rubio’s Transfer Treaty
Determination, TSC’s Secretary, Edward Campirano, wrote Rubio a formal letter
stating that he was ineligible to run under section 145.003 of the Texas
Election Code.  

In
response, Rubio filed a motion for temporary restraining order and a motion for
temporary injunction to prevent TSC from withholding his name from the ballot.
 After a hearing on the temporary injunction, the trial court made the
following findings of fact and conclusions of law:

FINDINGS
OF FACT

 

1.   
Plaintiff
was convicted of Transportation of Mari[h]uana in Mexico and sentenced to serve
ten years in prison.

 

2.   
The
crime of Transportation of Mari[h]uana in Mexico is a “serious offense” under
Mexican law.

 

3.   
A
“serious offense” under Mexican law is equivalent to a felony under Texas law.

 

4.   
Plaintiff
has not been pardoned, or otherwise had the disabilities of his conviction
removed.

 

5.   
Public
records in the official records of Texas Southmost College District
conclusively establish that Plaintiff was convicted of Transportation of
Mari[h]uana in Mexico.

 

6.   
Eduardo
Campirano, Secretary of the Board of Trustees of Texas Southmost College
District, declared Plaintiff ineligible to run for or serve on the Board of
Trustees, based on public records presented to him.

 

7.   
Eduardo
Campirano, Secretary of the Board of Trustees of Texas Southmost College
District, acted within the scope of his duties when he declared Plaintiff
ineligible to run for or serve on the Board of Trustees.

 

8.  The Board of
Trustees of Texas Southmost College District passed a resolution declaring
Plaintiff ineligible, based on public records conclusively establishing
Plaintiff’s [in]eligibility.

 

CONCLUSIONS
OF LAW

 

1.   
Section
145.003 of the Texas Election Code requires the electing authority to declare a
candidate ineligible, if public records conclusively establish his
ineligibility.

 

2.   
Pursuant
to Texas Election Code § 141.001, Plaintiff is ineligible to run for or serve
on the Board of Trustees of Texas Southmost College District.  

 

3.   
Defendants
acted appropriately and correctly, pursuant to Texas Election Code § 145.003,
by declaring Plaintiff ineligible to be a candidate for the position of Trustee
of Texas Southmost College District.

 

            The trial
court denied the injunction, and this appeal followed.

 

II.   Standard of Review and Applicable Law

 

            Whether to grant or deny a
temporary injunction is within the trial court's sound discretion. Butnaru
v. Ford Motor Co., 84 S.W.3d 198, 204 (Tex. 2002).  A reviewing court should reverse an order
granting or denying injunctive relief only if the trial court abused its discretion.
 Id. (citing Walling v. Metcalfe, 863 S.W.2d 56, 578 (Tex. 1993)).  An abuse of discretion occurs when the
trial court misapplies the law to the established facts.  State v. Sw. Bell
Tel. Co., 526 S.W.2d 526, 528 (Tex. 1975).  The reviewing court must not
substitute its judgment for the trial court's judgment unless the trial court's
action was so arbitrary that it exceeded the bounds of reasonable discretion. Butnaru,
84 S.W.3d at 204.[2] 


III.
  Analysis

A.     The Effect of a Foreign Conviction on Election Code § 141.001(a)(4)[3]

By
his second issue, Rubio argues that that a foreign conviction cannot constitute
a “final conviction” for the purposes of election code section 141.001(a)(4).
 Section 140.001 states that, “to be eligible to be a candidate for, or
elected or appointed to, a public elective office in this state, a person must
. . . have not been finally convicted of a felony from which the person has not
been pardoned or otherwise released from the resulting disabilities.”  Tex. Elec. Code Ann. § 141.001(a)(4)
(Vernon 2010).   

In
a treaty transfer pursuant to section 4106 of title 18 of the United States
Code,  the United States Parole Commission “translates the foreign sentence
into what is in reality a ‘sentence’ comparable to that for a domestic offender
convicted of a similar offense.”  Bennett v. U.S. Parole Comm’n, 83 F.3d
324, 327 (10th Cir. 1996) (citing Trevino-Casares v. U.S. Parole Comm’n,
992 F.2d 1068 (10th Cir. 1993)).   

[E]ven though the statute speaks of the Commission’s determination
as the specification of a “release date and a period and conditions of
supervised release,” § 4106A(b)(1)(A), it is in procedure, substance, and
effect tantamount to the imposition of a federal sentence, and it should, for
all practical purposes, be treated as such.

 

Bennett, 83 F.3d at 327 (citing Trevino-Casares,
992 F.2d at 1069 (footnote omitted)).  

Here,
Rubio’s Transfer Treaty Determination indicates that the U.S. Parole Commission
determined that the equivalent of his Mexican final conviction was a class E
federal felony offense in the United States.  In fact, 18 U.S.C.A. § 4106A
requires a determination be made for sentencing purposes “as though the
offender were convicted in a United States District Court of a similar offense.”
18 U.S.C.A. § 4106A (1990) (emphasis added).  The record also shows that after
Rubio was transferred to the United States, he served some time at the LaTuna
Federal Correctional Institution in Anthony, Texas before he was released on a
supervised release.  His supervised release lasted from August 28, 2001 until
March 7, 2003.  Under Bennett, Rubio’s limited time served at LaTuna
Federal Correctional Institution, combined with his three-year supervised
release, could be considered “in procedure, substance, and effect tantamount to
. . . a federal sentence.”  83 F.3d at 327.  In light of the foregoing, we hold
that the trial court did not abuse its discretion when it pronounced Rubio’s foreign
conviction constituted a “final conviction” under election code section
140.001(a)(4).  See Butnaru, 84 S.W.3d at 204.  

Our
conclusion that it was within the trial court’s broad discretion to deem
Rubio’s foreign conviction a final conviction is further supported by the
analysis and conclusions of an informal opinion letter rendered by Texas
Attorney General Greg Abbott in 2006.  Letter from Tex. Att’y Gen. to Hon.
Eddie Lucio, Jr. (May 1, 2006).  Although the opinions of the Texas
Attorney General are not controlling on state courts, such opinions may be
considered as persuasive authority, and in this matter, we find the opinion
persuasive. See Holmes v. Morales, 924 S.W.2d 920, 924 (Tex. 1996);
see also HEB Ministries, Inc. v. Tex. Higher Educ. Coordinating Bd., 235
S.W.3d 627, 661 n.148 (Tex. 2007); Comm'rs Court v. Agan, 940 S.W.2d 77,
82 (Tex. 1997); Bass v. Aransas County Indep. Sch. Dist., 389 S.W.2d
165, 176 (Tex. Civ. App.–Corpus Christi 1965, writ ref'd n.r.e.)
("Opinions of the Attorney General are not binding upon the courts, and
are not judicial precedents, but are persuasive and entitled to
consideration.").  

The
question posed to the Texas Attorney General was whether Rubio’s
 “conviction and imprisonment in Mexico, together with his transfer to the
United States jurisdiction and the court’s imposition of supervised release,
renders him ineligible to serve on the board of trustees.”  The attorney
general concluded that, “under the terms of section 141.001(a)(4) of the
Election Code, [Rubio] is not eligible to be elected or appointed to the Board
of Trustees of the Texas Southmost College District.”  Based on the record
before us, we agree.  The trial court reasonably determined that Rubio was not
eligible for candidacy in the 2008 TSC Board of Trustees election. 
Accordingly, we overrule Rubio’s second issue.

B.          
The Effect of Foreign
Convictions on Civil Rights

 

Having
determined that the trial court did not abuse its discretion when it held that
Rubio’s foreign conviction constituted a final conviction in Texas, we address
Rubio’s first issue, wherein he complains that this holding would violate his
fundamental civil right to run for elected office.  He argues that the right to
be a candidate for political office is protected by both the First and
Fourteenth Amendments of the United States Constitution.  

            The
Equal Protection Clause of the Fourteenth Amendment, as applied to the states,
guards against invidious discrimination.  See U.S. Const. amend. XIV; Hatten v. Rains, 854 F.2d 687,
690 (5th Cir. 1988).  This amendment invalidates classifications that
disadvantage a particular group or deprive a certain class of people their
fundamental rights.  Hatten, 854 F.3d at 690.  “Classifications which
‘impermissibly interfere with the exercise of a fundamental right or operate[]
to the peculiar disadvantage of a suspect class are subjected to strict
judicial scrutiny, meaning that they must constitute the least restrictive
means to achieve a compelling state interest.”  Id. (citing Mass. Bd.
of Ret. v. Murgia, 427 U.S. 307, 312 (1976)).  Classifications that disadvantage
a quasi-suspect class are subject to intermediate scrutiny, and “must bear a
significant relationship to an important state end.”  Id.  All other
classifications must only bear a rational relationship to a legitimate
legislative end.  Id.  

Felons
are not a suspect or quasi-suspect class.  Hilliard v. Ferguson, 30 F.3d 649, 652 (5th Cir. 1994) (“convicted felons are not a constitutionally protected
suspect class”).  Therefore, Texas’s restriction of
felons from running for office only needs to bear a rational relationship to a
legitimate state end.  See id.  As appellees note in their brief, the
Fifth Circuit has not directly addressed the issue of why Texas would exclude
felons from running for office.  The Fifth Circuit has, however, addressed why
convicted felons should not vote:  “a state properly has an interest in
excluding from the franchise persons who have manifested a fundamental
antipathy” to criminal laws “by violating those laws sufficiently important to
be classed as felonies.”  Shepherd v. Trevino, 575 F.2d 1110, 1115 (5th Cir.
1978).   Felons “have breached the social contract and . . . have raised
questions about their ability to vote responsibly.”  Id.  This reasoning
can easily explain why a state would exclude felons from running for political
office, as well.  Texas has a legitimate legislative reason to prevent persons
“who have manifested a fundamental antipathy” to law from enacting or enforcing
the laws, as elected officials must do—particularly those charged with
educating young persons.  Accordingly, we hold that section 141.001(a)(4) of the election code, which prohibits persons
finally convicted of felonies from being candidates for public office, does not
violate Rubio’s Fourteenth Amendment rights.  

            Rubio
also argues that section 141.001(a)(4) somehow violates his fundamental First Amendment
right of political association.  See U.S.
Const. amend. I.    However, “there is no fundamental right to be a
candidate.”  Hatten, 854 F.2d at 693; Plante v. Gonzalez, 575
F.2d 119, 1126 (5th Cir. 1978).  For all of these reasons, we overrule Rubio’s
first issue.  

C.          
Completion of the Sentence

 

By
his third issue, Rubio contends that he was “released from any resulting disabilities”
when he completed his sentence related to his foreign conviction, and thus,
should have the right to run for office.  However, Rubio cites no case law or
authority, and we find none, which supports this contention.  Furthermore, we
note that the Texas Code of Criminal Procedure provides a mechanism by which to
“restore” civil rights, but that Rubio would not be entitled to utilize this
mechanism by virtue of his crime:

Art. 48.05. RESTORATION OF CIVIL
RIGHTS.  (a)(1) An individual convicted of an offense described by
Subdivision (2) of this subsection may, except as provided by Subsection (b) of
this article, submit an application for restoration of any civil rights
forfeited under the laws of this state as a result of the conviction.

(2)
This article applies to:

(A)
a federal offense, other than an offense involving:

(i)
violence or the threat of violence;

(ii)
drugs; or

(iii)
firearms; and

(B) an
offense under the laws of another country, other than an offense involving:

(i)
violence or the threat of violence;

(ii)
drugs; or

(iii)
firearms, if the elements of the offense are substantially similar to elements
of an offense under the laws of this state punishable as a felony.

Tex. Code Crim. Proc. Ann. art.
48.05 (Vernon 2006) (emphasis added).  Thus, the Texas Legislature has
expressly prohibited persons who have been convicted of foreign offenses
related to violence, drugs, or firearms from applying for the restoration of
certain civil rights.  Because Rubio was convicted of a drug-related crime in
Mexico, he is unable to avail himself of this remedy.[4] 


As
we find no authority for Rubio’s contention that he was “released from any
resulting disabilities” when he completed the supervised release for this
treaty transfer, we overrule Rubio’s third issue.  

D.          
The Finality of the Judicial
Determination

 

By
his fourth issue, Rubio argues he should have been on the ballot for the TSC
Board of Trustees election in 2008 because the trial court had not ruled on the
date the ballots were prepared.  We note, however, that this issue is now
moot.  "The law is clear that a challenge to the candidacy of an
individual becomes moot 'when any right which might be determined by the
judicial tribunal could not be effectuated in the manner provided by law.'"
In re Sherman, 2010 Tex. App. LEXIS 761, at *2 (Tex. App.—Houston [1st
Dist.] Feb. 3, 2010) (orig. proceeding) (quoting Polk v. Davidson, 145
Tex. 200, 196 S.W.2d 632, 634 (Tex. 1946) (orig. proceeding)). "If a
challenge to a candidate's eligibility 'cannot be tried and a final decree
entered in time for compliance with pre-election statutes by officials charged
with the duty of preparing for the holding of the election,' we must dismiss
the challenge as moot."  In re Sherman, 2010 Tex. App. LEXIS 761,
at *2 (quoting Smith v. Crawford, 747 S.W.2d 938, 940 (Tex. App.—Dallas
1988, orig. proceeding)).  Because this ballot issue refers to an event “no
longer in controversy”, see Nat’l Collegiate Athletic Ass’n v. Jones, 1
S.W.3d 83, 86 (Tex. 1999), we overrule Rubio’s fourth issue.  

IV.   Conclusion

 

Because we have overruled
all of Rubio’s issues on appeal, we affirm.  

 

 

________________________

GINA
M. BENAVIDES,

Justice

 

 

Delivered and filed the

17th day of March, 2011. 

 









[1] The treaty, signed in 1976, allowed for
the transfer of prisoners between the U.S. and Mexico to serve their sentences
in their country of citizenship.  The treaty, in relevant part, provides that:

 

The United States of America and the United Mexican States,
desiring to render mutual assistance in combating crime insofar as the effects
of such crime extend beyond their borders and to provide better administration
of justice by adopting methods furthering the offender’s social rehabilitation,
have resolved to conclude a Treaty on the execution of penal sentences . . . .

 

 . . . .

 

Sentences imposed in the United Mexican States on nationals of the
United States of America may be served in penal institutions or subject to the
supervision of the authorities of the United States of America in accordance with
the provisions of this Treaty.  

 

Treaty on
the Execution of Penal Sentences, U.S.-Mex., November 25, 1976, 28 U.S.T. LEXIS 7399.





[2] Appellees propose an additional
standard of review: they argue that TSC’s administrative interpretation of the
Texas Election Code should be afforded Chevron deference.  See
Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843
(1984).  “Under Chevron, courts accord deference to an interpretation of
a statute adopted by the agency that has been charged by Congress with
responsibility for administering this provision.”  De La Mota v. U.S. Dep’t
of Ed., 412 F.3d 71, 79 (2nd Circ. 2005) (internal citations omitted). 
However, we hold that Chevron is inapplicable in this circumstance
because TSC was not necessarily “charged” by the legislature with administering
state election code; the Texas Secretary of State is the state agency charged
with this endeavor.  Accordingly, we conclude that an abuse of discretion
standard is appropriate in this circumstance.

 





[3] Appellees contend that this issue is moot, as the results
from this election were finalized in 2008.  "The law is clear that a
challenge to the candidacy of an individual becomes moot 'when any right which
might be determined by the judicial tribunal could not be effectuated in the
manner provided by law.'" In re Sherman, 2010 Tex. App. LEXIS 761,
at *2 (Tex. App.–Houston [1st Dist.] Feb. 3, 2010) (orig. proceeding) (quoting Polk
v. Davidson, 145 Tex. 200, 196 S.W.2d 632, 634 (Tex. 1946) (orig.
proceeding)).  However, because this appeal arises from Rubio’s second attempt
to run for office as a TSC trustee, we address this issue to provide clarity
for Rubio’s future actions.

 





[4]  We note that this statute
reinforces our finding that the trial court did not abuse its discretion when
it declared Rubio ineligible to run for office.  The plain language of article
48.05 of the code of criminal procedure clearly demonstrates that the Texas Legislature considers foreign convictions final for purposes of
determining certain civil rights.