**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

FRANK TSUI,
          *Defendant-Appellant.*

No. 07-30467

D.C. No.
CR-07-00432-MO-1

OPINION

Appeal from the United States District Court
for the District of Oregon
Michael W. Mosman, District Judge, Presiding

Submitted June 2, 2008
Seattle, Washington*

Filed June 25, 2008

Before: Warren J. Ferguson, Consuelo M. Callahan and
Otis D. Wright, II,** District Judge.

Opinion by Judge Callahan

---

*The panel unanimously finds this case suitable for decision without
oral argument. *See* Fed. R. App. P. 34(a)(2).

**The Honorable Otis D. Wright, II, United States District Judge for the
Central District of California, sitting by designation.

7445

## COUNSEL

Sean K. Kennedy, Federal Public Defender, and Brianna J. Fuller, Deputy Federal Public Defender, Los Angeles, California, for the petitioner-appellant.

Rockne Chickinell, General Counsel, U.S. Parole Commission, and Helen H. Krapels, Assistant General Counsel, Chevy Chase, Maryland, for the respondent-apppellee.

## OPINION

CALLAHAN, Circuit Judge:

Frank Tsui asserts that the United States Parole Commission improperly ruled that his supervised release on his South Korean conviction and sentence would continue through the expiration of his 60-month sentence, to December 8, 2008. Because the Parole Commission's ruling is not inconsistent with any plain language in the relevant treaty and statute, and is consistent with its regulation, we defer to the Parole Commission and affirm its determination of Tsui's sentence.

### A.	Background

Frank Tsui, a naturalized U.S. citizen, was arrested on December 4, 2003, in Los Angeles and extradited to South Korea. On September 24, 2004, Tsui was convicted by a South Korean court of conspiracy to traffic in narcotics, sentenced to five years of imprisonment with labor, and imprisoned in the Daejon Prison in South Korea.

In December 2005, the United States approved a request by Tsui to be transferred to the United States to serve the balance of his sentence. South Korea approved Tsui's request in November 2006, and Tsui eventually arrived in Los Angeles on April 18, 2007, and was detained.

South Korea and the United States are parties to the Council of Europe Convention on the Transfer of Sentenced Persons ("Treaty"), 35 U.S.T. 2867, T.I.A.S. No. 10824 (July 1, 1985). The Treaty provides that a country that receives a transferred prisoner may continue to enforce the foreign sentence. Article 10 of the Treaty states that "[i]n the case of continued enforcement, the administering State shall be bound by the legal nature and duration of the sentence as determined by the sentencing State." The United States has elected to continue to enforce Tsui's original sentence.

The United States Probation Office for the Central District of California prepared a Treaty Transfer Report. The report found that the South Korean offense of "conspiracy to traffic narcotics" was most similar to the federal offense of "conspiracy to possess with intent to distribute a controlled substance," 21 U.S.C. § 841. It further calculated a guideline range for Tsui of 87 to 108 months, but noted that "the combined period of imprisonment and supervised release cannot exceed 60 months, the length of the foreign sentence."

Tsui filed objections to the report urging that he be released immediately so that the Probation Office could have a substantial period of community monitoring. He noted that if the Parole Commission sentenced him to serve the entire five years of his sentence, the Parole Commission would be without authority to impose any term of supervised release. Tsui objected that the Parole Commission could not increase his "sentence by subtracting from the full-term prison sentence it imposed the good conduct time he will likely receive from the Bureau of Prisons, and then add it back to his sentence as supervised release time."

On October 19, 2007, the Parole Commission issued a Transfer Treaty Determination ("TTD"). The Commission first found that Tsui's total offense level was 29, his criminal history category was I, and the resulting guideline range was 87 to 108 months. The TTD then set a release date "after service of 52 months," noting that foreign labor credits and good conduct time, if any, would be deducted from this release date under Bureau of Prison procedures.[1] The TTD also provided that Tsui was "subject to a maximum period of supervised

---

[1]The TTD explained that the release date departed from the applicable guideline range "because 1) the combined period of imprisonment and supervised release cannot exceed the foreign 60 month sentence. A departure will allow for a period of supervision to assist your transition from incarceration. 2) You endured extremely harsh conditions in the foreign prison."

release of 3 years" but then modified that provision by providing:

> The Commission orders that transferee, immediately upon release from imprisonment, begin serving a 36-month period of supervised release, or until the full-term date of transferee's foreign sentence [currently calculated to be 12/28/2008], whichever is earlier. If the full-term date of transferee's foreign sentence occurs before completion of the period of supervised release the Commission has imposed, transferee's period of supervised release shall end on the date transferee's foreign sentence expires.

On October 23, 2007, Tsui was released from custody and began serving his supervised release. On November 27, 2007, he filed a timely petition for review by this court pursuant to 18 U.S.C. § 4106A(b)(2)(A).

## B.   Standard of Review

In *Ajala v. U.S. Parole Commission*, 997 F.2d 651, 653 (9th Cir. 1993), we recognized that 18 U.S.C. § 4106A(b)(2)(B) provides that the court "shall decide and dispose of the appeal in accordance with section 3742 of this title as though the determination appealed had been a sentence imposed by a United States district court." In *Kleeman v. U.S. Parole Commission*, 125 F.3d 725, 730 (9th Cir. 1997), we explained that:

> Our appellate review of the transfer determination is the functional equivalent of our review of a district court's sentencing decision. 18 U.S.C. § 4106A(b)(2)(A); *Trevino-Casares v. United States Parole Comm'n,* 992 F.2d 1068, 1070 (10th Cir. 1993). Thus, we review the Commission's interpretations of law (including foreign law) de novo, *see, e.g., Brady v. Brown,* 51 F.3d 810, 816 (9th Cir. 1995), and its factual findings for clear error. *See,*

*e.g., United States v. Buenrostro-Torres,* 24 F.3d 1173, 1174 (9th Cir. 1994).

## C. *Tsui's Contentions*

Tsui raises a single issue on appeal: he argues that his supervised release should end in June 2008, rather than in December 2008. Tsui reasons as follows: (a) pursuant to 18 U.S.C. § 4106A(b)(1)(C) the combined periods of imprisonment and supervised release may not exceed the 60 months imposed by the Korean court; and (b) because the Parole Commission imposed a period of imprisonment of 52 months, the period of supervised release cannot be greater than 8 months. In support of his approach, Tsui argues that the Bureau of Prisons, not the Parole Commission is charged with determining good time credits, citing *Ajala*, 997 F.2d at 655-56. He also argues that the Parole Commission must establish "a known period of supervised release" and may not set forth "an end-date for supervision" because the Parole Commission "is not in a position to determine the effect of good time credit on the sentence."

Tsui further argues that the Parole Commission's regulation, 28 C.F.R. § 2.68(a)(5), which he admits "purports to authorize exactly what the Parole Commission did," is not entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984), because the regulation conflicts with the language of the statute.[2]

---

[2]28 C.F.R. § 2.68(a)(5) reads:

> The release date that is determined by the Commission under 18 U.S.C. 4106A(b)(1)(A) is a prison release determination and does not represent the imposition of a new sentence for the transferee. However, the release date shall be treated by the Bureau of Prisons as if it were the full term date of a sentence for the purpose of establishing a release date pursuant to 18 U.S.C. 4105(c)(1). The Bureau of Prisons release date shall supersede the release date established by the Parole Commission under 18 U.S.C.

In particular, Tsui asserts that the statute " 'contravenes the structure and language of the statute as a whole,' *Nat'l R.R. Passenger Corp. v. Boston & Maine Corp.*, 503 U.S. 407, 417 (1992), because it imports calculation conducted under 18 U.S.C. § 4105 into the calculation conducted under section 4106A." Tsui contends that "the period of imprisonment and the period of supervised release imposed by the Parole Commission should be used to determine whether the foreign sentence has been exceeded."

## D. Analysis

**[1]** Tsui's attempt to terminate his supervised release six months early is not persuasive. Our review starts with the language of the Treaty[3] and the statute.[4] Although the Parole

---

4106A and shall be the date upon which the transferee's period of supervised release commences. If the Commission has ordered "continue to expiration," the 4106A release date is the same as the full term date of the foreign sentence. It is the Commission's interpretation of 18 U.S.C. 4105(c)(1) that the deduction of service credits in either case does not operate to reduce the foreign sentence or otherwise limit the Parole Commission's authority to establish a period of supervised release extending from the date of actual release from prison to the full term date of the foreign sentence.

[3]Article 10 is entitled "Continued enforcement" and reads:

1. In the case of continued enforcement, the administering State shall be bound by the legal nature and duration of the sentence as determined by the sentencing State.

2. If, however, this sentence is by its nature or duration incompatible with the law of the administering State, or its law so requires, that State may, by a court or administrative order, adapt the sanction to the punishment or measure prescribed by its own law for a similar offense. As to its nature, the punishment or measure shall, as far as possible, correspond with that imposed by the sentence to be enforced. It shall not aggravate, by its nature or duration, the sanction imposed in the sentencing State, nor exceed the maximum prescribed by the law of the administering State.

Commission could have adopted Tsui's perspective, and it appears that at one time it did,[5] the Parole Commission was

---

35 U.S.T. 2867, Article 10.

[4]18 U.S.C. § 4106A reads, in relevant part:

Transfer of offenders on parole; parole of offenders transferred

(a) Upon the receipt of an offender who is on parole from the authorities of a foreign country, the Attorney General shall assign the offender to the United States Parole Commission for supervision.

(b)(1)(A) The United States Parole Commission shall, without unnecessary delay, determine a release date and a period and conditions of supervised release for an offender transferred to the United States to serve a sentence of imprisonment, as though the offender were convicted in a United States district court of a similar offense.

(B) In making such determination, the United States Parole Commission shall consider—

(i)   any recommendation of the United States Probation Service, including any recommendation as to the applicable guideline range; and

(ii)   any documents provided by the transferring country; relating to that offender.

(C) The combined periods of imprisonment and supervised release that result from such determination shall not exceed the term of imprisonment imposed by the foreign court on that offender.

(D) The duties conferred on a United States probation officer with respect to a defendant by section 3552 of this title shall, with respect to an offender so transferred, be carried out by the United States Probation Service.

[5]*See, e.g., Ajala*, 997 F.3d at 653 (Parole Commission imposed 51 months imprisonment and 21 months supervised release on a 72-month English sentence); *Trevino-Casares*, 992 F.2d at 1069 (Parole Commission imposed 71 months imprisonment and 37 months supervised release on 108-month Mexican sentence); and *Asare v. U.S. Parole Comm'n*, 2 F.3d 540, 543 (4th Cir. 1993) (Parole Commission imposed 60 months imprisonment and 12 months supervised release on a 72-month English sentence).

not compelled to do so. The language in the Treaty and § 4106A does not clearly support Tsui's position. The Treaty states that the sentence "shall not be aggravated, by its nature or duration." 35 U.S.T. 2867, Art. 10 (2). The treaty does not appear to distinguish between imprisonment and supervised release. The statute, § 4106A(b)(1)(C), simply provides that "the combined periods of imprisonment and supervised release that result from such determination shall not exceed the term of imprisonment imposed by the foreign court on that offender." We do not see anything in the Treaty or the statute that compels the Parole Commission to apportion a transferee's remaining sentence between imprisonment and supervised release. Certainly, we do not see anything in the Treaty or the statute that compels the Parole Commission to calculate a transferee's sentence so that the period of imprisonment (not counting any good time credit) and the period of supervised release equal the remaining duration of the original sentence.

**[2]** Instead, we read § 4106A(b)(1) as delegating to the Parole Commission the responsibility for determining a transferee's sentence consistent with the requirement that "the combined periods of imprisonment and supervised release that result from such determination shall not exceed the term of imprisonment imposed by the foreign court on that offender." 18 U.S.C. § 4106A(b)(1)(C). Because responsibility for determining the sentence has been delegated to the Parole Commission and the language of the Treaty and statute does not direct the Parole Commission on how it is to calculate the sentence, its perspective is entitled to deference. *Chevron*, 467 U.S. at 843-44 ("if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute," and in reviewing the agency's action "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency").[6]

---

[6]Tsui's only challenge to deference under *Chevron* is that the regulation is inconsistent with the statute.

**[3]** The Parole Commission is the agency charged with implementing the statute. *See Bishop v. Reno*, 210 F.3d 1295, 1302 n.11 (11th Cir. 2000). Its regulation, 28 C.F.R. § 268(a)(5), specifically states "[i]t is the Commission's interpretation of 18 U.S.C. § 4105(c)(1) that the deduction of service credits in either case does not operate to reduce the foreign sentence or otherwise limit the Parole Commission's authority to establish a period of supervised release *extending from the date of actual release from prison to the full term date of the foreign sentence*." (emphasis added). We are required to defer to the Parole Commission unless its approach is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron*, 467 U.S. at 843-44.

**[4]** The regulation is not arbitrary, capricious, or manifestly contrary to the statute. It is consistent with the purposes of the Treaty and the statute because it prevents a transferred prisoner's sentence from being longer than his original sentence and allows the prisoner the benefit of an earlier release from imprisonment, but also ensures that the sentence is not shorter in duration than the original sentence. It does not deny a transferee the benefit of good time credit, but at the same time does not allow good time credit to reduce "the duration of the sentence as determined by the sentencing State." 35 U.S.T. 2867, Art. 10(1). Furthermore, the Parole Commission's position makes sure that the remaining sentence is not greater than the original sentence by providing that where the period of supervised release would otherwise exceed the duration of the original sentence, supervised release terminates when the full term of the original sentence is completed.

Although the Parole Commission appears to have changed its approach, its current position is not contrary to our opinion in *Ajala*, 997 F.2d at 657. In *Ajala*, the Parole Commission had "ordered that Ajala serve 51 months imprisonment and 21 months supervised release, which equaled the 72 months sentence imposed by the English court." *Id.* at 653. On appeal, Ajala contended that the Parole Commission had failed to

take into consideration the good time credit she had earned in a British prison. *Id.* at 654. We held that the calculation of credit was committed to the Bureau of Prisons and was not part of the Parole Commission's § 4106A determination, and accordingly was not within the court's jurisdiction when reviewing the Parole Commission's decision. *Id.* at 655-56.

**[5]** Our recognition in *Ajala* of the separate responsibilities of the Parole Commission and the Bureau of Prisons implies that the relative periods of time for incarceration and supervised release are not critical to the calculation of a sentence under § 4106A(b)(1)(A). If the Parole Commission had directed that Tsui be incarcerated for the full 60 months, he would have no claim against the Parole Commission, but arguably could challenge the Bureau of Prisons if it did not honor any good time credit he claimed to have earned.[7] Furthermore, *Ajala* suggests that whether a transferred prisoner had earned good time credit while serving his sentence in a foreign prison is a question for the Bureau of Prisons, not the Parole Commission. *Id.* at 656. Accordingly, nothing in *Ajala* prohibits the Parole Commission from imposing a period of supervised release that lasts as long as the transferred prisoner's foreign sentence.

**[6]** Finally, Tsui's argument that the Parole Commission must establish a "known period of supervised release" rather than "an end date for supervision," does not support a grant of any relief. First, the Parole Commission did set a "known period of supervised release" when it imposed a three-year period of supervised release. It then followed the restraints established by the Treaty and the statute by ordering that, in any event, the period of supervised release would conclude on December 28, 2008. Second, there is nothing in the Treaty or the statute that compels the approach urged by Tsui, and,

---

[7]Title 18 U.S.C. § 4105(c)(1) and (2) provides that a transferred offender is entitled to credits for good time unless the country from which the offender is transferred does not give credit for good time.

accordingly, we must defer to the Parole Commission's position as set forth in 28 C.F.R. § 2.68(a)(5). Certainly, Tsui would prefer that the Parole Commission had continued its apparent practice of computing the terms of imprisonment and supervised release to total the length of the foreign sentence, but he has failed to show that such a practice is compelled by the Treaty, the statute, or otherwise.[8]

## E. Conclusion

The Treaty and the applicable statutes provide that Tsui's sentence in the United States not exceed his sentence in South Korea. The Parole Commission's determination that his supervised release will run throughout his 60-month original sentence conforms to that requirement. Tsui has shown that the Parole Commission could have calculated his sentence in such a way that his supervised release might have ended sooner. However, Tsui has not shown that the Treaty or the statutes compel such a result, or that 28 C.F.R. § 2.68(a)(5), which authorizes the extension of supervised release to the full term of the foreign sentence, is inconsistent with the statutes. Accordingly, even if the Parole Commission's position were not as reasonable as it appears to be, it would be entitled to deference under *Chevron*. The Parole Commission's determination of Tsui's sentence is **AFFIRMED**.

---

[8]Tsui's argument that the Parole Commission may not add back good time credit as part of the period of supervised release mischaracterizes what the Parole Commission did, and fails to recognize the great difference between imprisonment and supervised release. The Parole Commission did not "add back good time credit." Rather it simply recognized that the period of supervised release that it had otherwise ordered was limited by the Treaty and the statute. Moreover, most prisoners would gladly accept an extension of supervised release in return for release from confinement.