# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-60656

United States Court of Appeals
Fifth Circuit

**FILED**

September 18, 2015

Lyle W. Cayce
Clerk

ANTHONY BENDER,

> Petitioner

v.

UNITED STATES PAROLE COMMISSION,

> Respondent

Appeal from the Determination of the
United States Parole Commission

Before REAVLEY, PRADO, and COSTA, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Anthony Bender, a U.S. citizen, was convicted in a Costa Rican tribunal of three counts of rape and sentenced to thirty years in prison. Pursuant to a treaty, Bender was transferred to serve his time in an American federal prison. Bender appeals the United States Parole Commission's release-date determination. He argues his sentence is unlawful because it is in excess of the statutory maximum, impermissibly indeterminate, and procedurally and substantively unreasonable. We affirm.

## I. BACKGROUND

In 2006, Bender was convicted of three counts of rape and sentenced to thirty years in prison by a Costa Rican tribunal. The tribunal set February 19, 2035, as Bender's preliminary release date, taking into account time served. In

No. 14-60656

2012, Bender applied for transfer to a United States prison to serve the remainder of his sentence, pursuant to the Council of Europe Convention on the Transfer of Sentenced Persons ("Treaty" or "Transfer Treaty"). Bender was referred to the U.S. Parole Commission to set a date for release from custody.

The probation office prepared a Post-Sentence Investigation Report (PSR). The PSR described the relevant facts of the offense, as reported by the Costa Rican court. The specific details of the offense factored heavily in the release-date determination: On July 25, 2005, Bender invited M.J., the victim, to ride with him toward the downtown area of Puerto Jimenez, Costa Rica. M.J. boarded Bender's vehicle, and Bender sped toward his house. When they arrived, Bender grabbed M.J. and forced her to enter his house. He removed all her clothing and raped her, orally and vaginally, three times. Bender used physical force, causing injury to M.J.'s face, neck, chest, limbs, and genitals. M.J. provided additional details to the Probation Officer: She reported forcible anal penetration and choking, and she stated that Bender threated to bring his friends to rape her, to show her child pornography, and to videotape their sexual acts. M.J. escaped and hid in a swamp until a guard found her.

The PSR calculated a base offense level of 30 and added 10 points based on 3 multiple-count adjustments and on the specific offense characteristics, yielding an adjusted offense level of 43. It assessed one criminal-history point based in part on Bender's 2000 Missouri conviction for first-degree sexual misconduct, yielding a criminal history category of I. Although the PSR listed three other convictions and eight other arrests, it did not factor them into the offense-level calculation. The PSR also noted Bender's history of substance abuse, which began at age 12 and included alcohol, marijuana, and cocaine use.

The Transfer Treaty documents, the PSR, and Bender's objections to the PSR provide details of Bender's "horrible" conditions of confinement in Costa Rica. Bender reports that the prison was overcrowded, lacked air conditioning,

No. 14-60656

heating, and windows, and was infested with vermin; the drinking water and food that prisoners received were contaminated with feces; drugs, alcohol, and tobacco were prevalent inside the prison; and the penitentiary was essentially run by gangs. Bender's preexisting spinal cord injury worsened in prison: he developed several herniated discs in his neck and lower back, which caused loss of motor function and of bowel and bladder control. Bender sought medical care, but the care was inadequate.

The PSR calculated a Guidelines range of life imprisonment but noted that the Costa Rican sentence was 360 months. Bender objected to the PSR, requesting a two-level reduction for acceptance of responsibility pursuant to United States Sentencing Guidelines Manual (U.S.S.G.) § 3E1.1(a) and a downward departure based on the severe abuse he experienced while imprisoned in Costa Rica.

A Hearing Examiner from the Parole Commission held a hearing to determine Bender's release date. The Examiner summarized Bender's offense, heard testimony from the victim, and listened to Bender's description of his conditions of confinement, his medical status, his criminal record, and his history of substance abuse. Although the Examiner noted that Bender might be eligible for a downward departure based on the severe abuse he suffered in prison, she declined to depart because of the aggravating factors in his case: a "horrible" crime lasting four hours, a history of alcohol and drug abuse, and prior contact with the criminal-justice system involving sexual misconduct.

Finding that the proposed release date met the goals of § 3553(a), the Examiner recommended 360 months in prison minus good time credits and supervised release for five years or until the expiration of Bender's Costa Rican sentence, whichever happens first. The Parole Commission accepted the Examiner's recommendation and set September 13, 2031, as Bender's release date. Bender timely appealed.

3

No. 14-60656

## II. DISCUSSION

The United States Parole Commission had jurisdiction to set Bender's release date pursuant to 18 U.S.C. § 4106A(b)(1)(A). Because Bender is incarcerated in Texas, this Court has jurisdiction to "decide and dispose of the appeal in accordance with [18 U.S.C. § 3742] as though the determination appealed had been a sentence imposed by a United States district court." *Id.* § 4106A(b)(2)(B).

Bender raises two challenges to his sentence. First, he claims the sentence is illegal because it exceeds the statutory maximum, devalues his good time credits, and is impermissibly indeterminate. Second, he contends the sentence is procedurally and substantively unreasonable.

### A.     Illegality

This Court exercises review over a Transfer Treaty prisoner's sentence as it would over that of an ordinary federal prisoner sentenced in district court. *Id.* § 4106A(b)(2)(A); *Molano–Garza v. U.S. Parole Comm'n*, 965 F.2d 20, 23 (5th Cir. 1992). The Parole Commission's construction of statutory law and the Sentencing Guidelines is reviewed de novo and its factual findings are reviewed for clear error. *Molano–Garza*, 956 F.2d at 23.

Bender advances two arguments why his sentence is illegal. First, he contends that the Parole Commission imposed a sentence (360 months and 5 years of supervised release) that on its face exceeds his foreign sentence, in violation of federal statute. Second, he argues that his sentence is indeterminate and devalues his good time credits. Both are questions of first impression in this Court, though the Seventh and Ninth Circuits have addressed similar claims. *See United States v. Tsui*, 531 F.3d 977 (9th Cir. 2008); *Cafi v. U.S. Parole Comm'n*, 268 F.3d 467 (7th Cir. 2001).

4

No. 14-60656

### 1. Statutory and Regulatory Framework

Domestic statutory law sets the parameters for incarceration of prisoners transferred from foreign countries under the Transfer Treaty.

> [A]n offender serving a sentence of imprisonment in a foreign country transferred to the custody of the Attorney General shall remain in the custody of the Attorney General *under the same conditions* and for the same period of time as an offender who had been committed to the custody of the Attorney General by a court of the United States for the period of time imposed by the sentencing court.

18 U.S.C. § 4105(a) (emphasis added).

The Parole Commission is authorized to set release dates for prisoners transferred from foreign countries under the Transfer Treaty. Because the prisoner is sentenced under the authority of the foreign sovereign, the Commission's action formally is a release-date determination and not a sentence. *See Thorpe v. U.S. Parole Comm'n*, 902 F.2d 291, 292 (5th Cir. 1990) (per curiam); 28 C.F.R. § 2.68(a)(5).

The Commission is instructed to impose *both* a term of imprisonment and a period of supervised release: "The United States Parole Commission shall, without unnecessary delay, *determine a release date and a period and conditions of supervised release* for an offender transferred to the United States to serve a sentence of imprisonment, *as though* the offender were convicted in a United States district court of a similar offense." 18 U.S.C. § 4106A(b)(1)(A) (emphasis added). However, Congress has imposed a temporal limitation on the Parole Commission's discretion: "The combined periods of imprisonment and supervised release that result from such determination *shall not exceed the term of imprisonment imposed by the foreign court* on that offender." *Id.* § 4106A(b)(1)(C) (emphasis added).

Finally, Congress has legislated to ensure that transferred prisoners receive good time credits earned both abroad and in the U.S.: "The transferred

5

offender *shall be given credit* toward service of the sentence for any days, prior to the date of commencement of the sentence, spent in custody in connection with the offense or acts for which the sentence was imposed." 18 U.S.C. § 4105(b) (emphasis added). Once the prisoner is transferred to Bureau of Prisons custody, the Bureau evaluates the course of the prisoner's service and awards good time credits pursuant to 18 U.S.C. § 4105(c)(1) and 18 U.S.C. § 3624(a). Courts have instructed the Commission to consider a transferee's foreign good time credits in calculating his release date: the statutory-maximum release date that the Commission may impose is the prisoner's foreign sentence minus his good time credits. *Thorpe*, 902 F.2d at 292.

### 2. *Sentence in Excess of Statutory Maximum*

Against this legal backdrop, Bender argues that the Commission erred by imposing a sentence above the statutory maximum. Although both parties agree that a transferee may not be required to *serve* a combined term of imprisonment and supervised release that exceeds the foreign release date, they disagree as to whether the terms *imposed* may, on paper, exceed the foreign sentence. The Commission sentenced Bender to thirty years in prison followed by a period of supervised release to last five years "or until the full-term date of [Bender's] foreign sentence . . . , whichever is earlier." Bender asserts that his sentence violates the requirement that transferred prisoners serve terms of imprisonment "as though" they were convicted and sentenced in federal district court: because in a U.S. court "a defendant facing a maximum sentence of 30 years in prison and no term of supervised release (which was Mr. Bender's foreign sentence) could not be sentenced to 30 years in prison and a 5 year term of supervised release," Bender claims his sentence is unlawful.

However, as this Court has held, the "as though" language in the statute does not require strict congruity between treatment of domestic and Transfer Treaty offenders. *See Molano–Garza,* 965 F.2d at 25 (noting that "[s]ince the

No. 14-60656

Commission is only determining a release date and not sentencing the offender," it need not strictly comply with federal sentencing law). Because the statute's use of "as though" is ambiguous, we defer to the Commission's reasonable interpretation of the provision under *Chevron U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837 (1984). *See Cafi*, 268 F.3d 473–74 (concluding that the "as though" provision of § 4106A is ambiguous).[1]

Under the Commission's regulations, time *served*, not time sentenced, is the relevant metric: the prisoner's total time under federal supervision must not exceed the foreign sentence. The regulations contemplate a sentence like Bender's: "The combination of the period of imprisonment *that results* from the release date set by the Commission and the period of supervised release shall not exceed the full term of the sentence imposed by the foreign court." 28 C.F.R. § 2.68(a)(3) (emphasis added); *see also id.* §2.68(a)(7) ("It is the Commission's interpretation of [18 U.S.C. § 4106A] that U.S. Code provisions for mandatory minimum terms of imprisonment and supervised release, as well as sentencing guideline provisions implementing such U.S. Code requirements . . . , were not intended by Congress to be applicable in an 18 U.S.C. 4106A(b)(1)(A) determination.").

 As the Seventh Circuit observed,

> It is perfectly reasonable for the Commission to have decided that it is more important for a transferee to serve a prison sentence first and then, if time remains on his outstanding foreign sentence, require that term to be served on supervised release. This would best serve the congressional goal of seeking equal treatment of

---

[1] *See also Asare v. U.S. Parole Comm'n*, 2 F.3d 540, 543 (4th Cir. 1993) ("When statutes charge agencies with the responsibility of administering a statutory scheme, the agencies' reasonable interpretations of the statute that they are applying are entitled to deference."); *Trevino–Casares v. U.S. Parole Comm'n*, 992 F.2d 1068, 1072 (10th Cir. 1993) ("[T]he Commission administers, in part, the statutory scheme under review and, therefore, the principles of deferential review summarized in *Chevron* . . . are implicated here.").

similarly situated Treaty and non-Treaty prisoners with respect to the *term of incarceration*.

*Cafi*, 268 F.3d 74. We find this reasoning persuasive. The Commission's regulation weighs policy concerns within its particular expertise and does not yield an arbitrary or unreasonable outcome. *See Barnhart v. Walton*, 535 U.S. 212, 222 (2002). Therefore, although the foreign sentence serves as a cap on the amount of time a transferred prisoner may serve, it does not operate precisely as a statutory maximum under federal sentencing law. Deferring to the Commission's reasonable interpretation of the statutory maximum in 28 C.F.R. § 2.69(a)(3) and (7), we join our colleagues in the Seventh and Ninth Circuits in holding that so long as Bender is released from supervision by the expiration of his foreign sentence, his release date is permissible under federal law.

### 3. *Release Date Results in Indeterminate Sentence*

Second, Bender asserts that his release-date determination is impermissibly indeterminate. He objects to his term of supervision, which "expands or shrinks to fit the time between the release from prison and the full expiration date." Such "accordion" sentences are unavailable under federal law and contrary to state and federal policy, Bender claims. This indeterminacy has the added consequence of devaluing Bender's good time credits: the more credits he accrues, the sooner he is released; the sooner he is released, the longer his period of supervision becomes.

The Commission promulgated a regulation expressly authorizing sentences like Bender's: "It is the Commission's interpretation of 18 U.S.C. § 4105(c)(1) that the deduction of service credits . . . does not operate to reduce the foreign sentence or otherwise limit the Parole Commission's authority to establish a period of supervised release *extending from the date of actual release from prison to the full term date of the foreign sentence.*" 28 C.F.R.

§ 2.68(a)(5) (emphasis added). Therefore, *Chevron* once again governs our analysis. *See Tsui*, 531 F.3d at 981.

The Ninth Circuit examined this regulation under *Chevron* in *Tsui*:

> The regulation is not arbitrary, capricious, or manifestly contrary to the statute. It is consistent with the purposes of the Treaty and the statute because it prevents a transferred prisoner's sentence from being longer than his original sentence and allows the prisoner the benefit of an earlier release from imprisonment, but also ensures that the sentence is not shorter in duration than the original sentence. It does not deny a transferee the benefit of good time credit, but at the same time does not allow good time credit to reduce "the duration of the sentence as determined by the sentencing State." 35 U.S.T. 2867, Art. 10(1). Furthermore, the Parole Commission's position makes sure that the remaining sentence is not greater than the original sentence by providing that where the period of supervised release would otherwise exceed the duration of the original sentence, supervised release terminates when the full term of the original sentence is completed.

*Id.* at 981–82.

We agree with the Ninth Circuit. The Commission's regulation takes into account the Transfer Treaty's policy aims and reconciles the statute's ambiguous mandate with its clear limitation that the combined term of imprisonment and supervised release shall not exceed the foreign sentence. Like the Ninth Circuit, we note that a release-date determination set pursuant to this provision *does* set a "known period of supervised release"—in Bender's case, a maximum of five years. *See id.* at 982. The Commission's rule is "not arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 981. We therefore hold that Bender's release-date determination is permissible under federal law.[2]

---

[2] At oral argument, Bender agreed that his total time in federal custody could be less than his foreign sentence: if he earns more than five years in good time credits, his supervised release will end before the thirty-year term of his Costa Rican sentence elapses.

## B.    Procedural and Substantive Reasonableness

Bender next argues that his sentence is procedurally and substantively unreasonable. He contends, first, that the Hearing Examiner improperly relied on "bare arrest records"; second, that she erred by declining to grant a downward departure based on the severe abuse he suffered in prison; and third, that the sentence does not take into account his history of substance abuse or his experience in the Costa Rican prison.

We review the reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). First, we ask whether the sentencer committed "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range . . . [or] failing to consider the § 3553(a) factors." *Id.* If the decision is procedurally sound, we next consider "the substantive reasonableness of the sentence," taking into account the totality of the circumstances. *Id.* A sentence within the properly calculated Guidelines range is presumptively reasonable, and "[t]he presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." *United States v. Cooks*, 589 F.3d 173, 186 (5th Cir. 2009).

Bender did not object to the Examiner's reference to Bender's arrest record. We therefore review this issue for plain error. *See United States v. Williams*, 620 F.3d 483, 493 (5th Cir. 2010).[3] In contrast, Bender objected to both the PSR's and the Hearing Examiner's treatment of the abuse Bender suffered in Costa Rica, stating he thought the release-date determination

---

[3] A defendant challenging his sentence on plain-error review must show (1) error (2) that is plain and that (3) affected his substantial rights. *Williams*, 620 F.3d at 493–94. This Court may correct the error if (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.*

resulted in a substantively unreasonable sentence. We correspondingly review Bender's second and third objections for harmless error. *See United States v. Ibarra–Luna*, 628 F.3d 712, 713–14 (5th Cir. 2010).

### 1. Bare Arrest Records

Due process requires that sentencing facts be established by a preponderance of the evidence. *United States v. Windless*, 719 F.3d 415, 420 (5th Cir. 2013). Therefore, an adjudicator "may not rely on a 'bare arrest record' at sentencing." *Id.* "An arrest record is 'bare' when it refers to the mere fact of an arrest—*i.e.*, the date, charge, jurisdiction and disposition—without corresponding information about the underlying facts or circumstances regarding the defendant's conduct that led to the arrest." *Id.* (alteration, footnotes and internal quotation marks omitted).

The Hearing Examiner mentioned Bender's unprosecuted arrests when reviewing his criminal history, and Bender's PSR refers only to "the mere fact of [his] arrest[s]," *id.* But even assuming the Examiner erred and the error was plain, Bender has not carried his burden to demonstrate that the error "affected the outcome of the . . . proceedings"—i.e., a reasonable probability that his sentence would have been different. *Puckett v. United States*, 556 U.S. 129, 135, 142 n.4 (2009) ("When the rights acquired by the defendant relate to sentencing, the 'outcome' he must show to have been affected is his sentence."). The PSR correctly calculated Bender's guidelines range. The Examiner analyzed the § 3553(a) factors on the record, including Bender's history of substance abuse and his Missouri conviction for first-degree sexual misconduct in 2000. Most importantly, she gave heavy weight to the extensive testimony about the "horrible" nature of Bender's Costa Rican offense, including from the victim. It was this testimony—and not Bender's arrests—that the Examiner specifically mentioned as the reason for declining to give a downward departure for the abuse Bender suffered in the Costa Rican prison. *Cf.*

*Williams*, 620 F.3d at 496 (noting that where the district court based a sentencing variance on the defendant's multiple convictions, his recidivism, the brazen nature of his crime, and hearing testimony, "[the defendant] ha[d] not demonstrated a reasonable probability that he would have received a lesser sentence but for the court's consideration of his 'bare' arrest record"). Therefore, we conclude that any error did not affect Bender's substantial rights, and we affirm his sentence on these grounds.

### 2. *Failure to Consider Severe Abuse Suffered in Prison*

Bender next argues that his sentence is procedurally unreasonable because the Examiner failed to take into account the abuse he suffered in prison. Bender contends that the Commission's Rules and Procedures Manual creates a presumption that the Commission will grant a downward departure—resulting in "an earlier release date than the full term date of the foreign sentence"—"in the case of torture or other severe abuse." U.S. Parole Comm'n, Rules & Procedures Manual app. 4 at 297–98 (ch. 5, pt. K, § D.1) [hereinafter "Manual"].[4]

We are not persuaded that the Manual creates a mandatory presumption. The introduction to the Manual provides: "The notes, procedures, and appendices in this manual are intended only for the guidance of Parole Commission personnel and those agencies which must coordinate their work with the Commission. The notes, procedures, and appendices do not confer legal rights and are not intended for reliance by private persons." Manual 9; *see also James v. U.S. Parole Comm'n*, 159 F.3d 1200, 1205–06 (9th Cir. 1998) (noting that while courts have held that the Commission must follow its

---

[4] The Manual is available at ROA.193–201 and online at http://www.justice.gov/sites/default/files/uspc/legacy/2010/08/27/uspc-manual111507.pdf. The Manual defines "Other severe abuse" as "conditions of confinement or conduct (for example, conduct by other prisoners) that inflicts severe physical or mental pain or suffering upon a prisoner, but is not officially instigated or otherwise does not meet the definition of torture." Manual 298 (§ D.3).

regulations, the obligation does not extend to internal guidelines that are not officially promulgated and codified in the Code of Federal Regulations and that are "interpretive" and "not intended to have the force of law"); *accord Contreras v. U.S. Parole Comm'n*, 207 F.3d 658, 658 n.7 (5th Cir. 2000) (per curiam) (unpublished).[5]

Finally, the record itself indicates that the Examiner considered, and rejected, Bender's plea for a departure. We therefore hold that the Hearing Examiner did not err in failing to depart downward.

### 3. *Substantive Reasonableness*

Finally, Bender argues that his sentence is substantively unreasonable. Because the Examiner committed no significant procedural error, Bender must overcome the presumption that his within-Guidelines sentence is substantively reasonable. *See Cooks*, 589 F.3d at 186. As noted, "[t]he presumption is rebutted only upon a showing that the sentence does not account for a factor that should receive significant weight, it gives significant weight to an irrelevant or improper factor, or it represents a clear error of judgment in balancing sentencing factors." *Id.* Bender argues that the Examiner considered his bare arrests (giving weight to an improper factor) and did not sufficiently consider his conditions of confinement or his history of addiction to alcohol and drugs (failing to account for a significant factor).

The record does not support Bender's contentions. The Examiner's reference to Bender's prior criminal conduct comprises only one sentence in her five-minute statement of reasons; she focused primarily on the aggravating

---

[5] In *Contreras*, we wrote: "Any suggestion by Contreras that the Commission violated due process by refusing to follow procedures mandated by its internal policy guidelines is adequately countered by *James v. United States Parole Commission*. There, on facts similar to the instant case, the court held that the Commission's internal policy manual did not create due process rights in others." 207 F.3d at 658 n.7 (citation omitted).

factors of Bender's offense behavior. We conclude that the Examiner did not abuse her discretion in the weight she gave Bender's criminal history.

As for Bender's conditions of confinement, the Examiner stated on the record that she considered the mistreatment Bender experienced in the Costa Rican penitentiary. After she announced her recommended sentence, Bender objected, and the Examiner once again stated that she would not depart downward based on mistreatment because of the severity of Bender's offense. The Examiner had the benefit of the State Department's country-conditions report on Costa Rica, a newspaper article on the prison, and about fifteen minutes of Bender's own testimony at the hearing. The record reflects that the Examiner properly considered the abuse that Bender experienced in Costa Rica prior to setting his release date.

Finally, the Examiner also had occasion to weigh Bender's history of substance abuse. Bender mentioned his own alcohol and cocaine use during the hearing, and he discussed substance-abuse treatment programs with the Examiner. Bender's PSR also mentioned his history of substance abuse. Finally, the Examiner's hearing report summarized this evidence and remarked that Bender has "a history of . . . substance abuse."

We conclude that the Hearing Examiner did not abuse her discretion and hold that Bender's sentence is substantively reasonable. *See Thorpe*, 902 F.2d at 292–93 (affirming sentence where petitioner argued "the Commission failed to take into account his health and the abuse he suffered at the hands of foreign officials" but "[t]he record indicates that these factors were considered").

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the Parole Commission's sentence.